**O**
**JS-6**

# United States District Court
# Central District of California

| | |
|---|---|
| SHANA BERG, et al., | Case No. 2:16-cv-03656-ODW |
| Plaintiffs, | Case No. 2:16-cv-03658-ODW |
| v. | |
| FERRING PHARM., INC., FERRING RESEARCH INST., INC., FERRING INT'L PHARMASCIENCE CTR. U.S., INC., FERRING PROD., INC., and DOES 1–500, Inclusive, | **ORDER GRANTING PLAINTIFFS' MOTIONS TO REMAND [23, 23]** |
| Defendants. | |
| CHRISTINA AZINIAN-YAZEJI, et al., | |
| Plaintiffs, | |
| v. | |
| FERRING PHARM., INC., FERRING RESEARCH INST., INC., FERRING INT'L PHARMASCIENCE CTR. U.S., INC., FERRING PROD., INC., and DOES 1–500, Inclusive, | |
| Defendants. | |

## I.   INTRODUCTION

On August 15, 2016, Plaintiffs in these two separate, but largely identical, actions moved to remand the cases to the Los Angeles Superior Court, arguing that this Court lacks jurisdiction over the non-diverse actions.[1] (2:16-cv-03658-ODW-PJW ("Azinian Action"), ECF No. 23; 2:16-cv-03656-ODW-PJW ("Berg Action"), ECF No. 23.) After reviewing Plaintiffs' Motions to Remand, it is clear that, in each action, one of the defendants is not diverse from several Plaintiffs. Consequently, these actions are **REMANDED** to state court.[2]

## II.   FACTUAL BACKGROUND

On April 26, 2016, Plaintiffs filed two separate personal injury claims in Los Angeles County Superior Court against the manufacturers and distributors of Bravelle, a follicle stimulating hormone (FSH). (Azinian Compl. ¶¶ 16–39, ECF No. 1-2; Berg Compl. ¶¶ 16–39, ECF No. 1-2.) Bravelle is a brand of urinary FSH prescribed to stimulate development of follicles and growth of eggs in women for in-vitro fertilization (IVF) and alternative reproductive therapy (ART). (Azinian Compl. ¶¶ 3–9, 41; Berg Compl. ¶¶ 3–9, 41.) Defendants marketed Bravelle as an effective treatment for infertility from 2002 to 2015. (Azinian Compl. ¶¶ 59–63; Berg Compl. ¶¶ 59–63.) However, after reports of the drug's sub-potency, the Food and Drug Administration ("FDA") recalled Bravelle in September 2015. (Azinian Compl. ¶ 17; Berg Compl. ¶ 17.)

Plaintiffs in both actions purchased Bravelle between 2014 and 2015. (Azinian Compl. ¶¶ 16–39; Berg Compl. ¶¶ 16–39.) All allege that Defendants were negligent in their design and promotion of the drug and breached an implied warranty. (Azinian

---

[1] After carefully considering Plaintiffs' Motions and the documents filed in support and opposition thereof, and in the interest of judicial efficiency, the Court will assess the arguments made in these identical actions together. Hereinafter, the Court will refer to the "Berg" and "Azinian" Actions.

[2] After carefully considering the papers filed in support of the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7–15.

Compl. ¶¶ 67–96, 103–19; Berg Compl. ¶¶ 67–96, 103–19.) Plaintiffs claim that, but for Bravelle's sub-potency and stability, which reduced the efficacy of their IVF procedures, and Defendants' assurances of the drug's efficacy, they would not have purchased Bravelle. (Azinian Compl. ¶¶ 16–39; Berg Compl. ¶¶ 16–39.) Plaintiffs also allege that they suffered from cysts and other physical injuries associated with Bravelle. (*Id.*) Accordingly, all seek economic damages, including the cost of Bravelle treatment, IVF treatment, and other costs associated with hormones for IVF treatment. (*Id.*)

On May 25, 2016, Defendants Ferring Pharmaceuticals, Inc. (FPI), Ferring Research Institute, Inc. (FRI), Ferring International Pharmascience Center U.S., Inc. (FIP), Ferring Production, Inc. (FPRI) (collectively, "Defendants") removed the actions to federal court based on diversity jurisdiction. (Azinian Not. of Removal, ECF No. 1; Berg Not. of Removal, ECF No. 1 ("Removal Notices").)

Seven of the plaintiffs—Shana Berg, Jessica Arabshahi, Amy Kane, and Jennifer Sundt-Rodrigues in the Berg Action, and Christina Azinian-Yazeji, Amy Chammas, and Romy Ostrovitz in the Azinian Action—are citizens of California. (Azinian Compl. ¶¶ 16, 21, 27; Berg Compl. ¶¶ 16–17, 24, 39.) Defendants FPI, FIP, and FPRI are incorporated in Delaware with their principal places of business in New Jersey, thus making them citizens of Delaware and New Jersey for purposes of diversity jurisdiction. (Removal Notices ¶¶ 16–17.) Defendant FRI, however, is incorporated with its principal place of business in California, thus making FRI a citizen of California for purposes of diversity jurisdiction. (*Id.* ¶ 18.) While both parties agree that this Court would have jurisdiction if FRI were not a party, Defendants claim that Plaintiffs fraudulently joined FRI in order to destroy diversity and keep this matter in state court. (*Id.*; Azinian Mot. to Remand ¶ 13, ECF No. 23; Berg Mot. to Remand ¶ 13, ECF No. 23 ("Mots.").) Plaintiffs argue that FRI was properly joined, as (1) FRI was named in the original Complaints and (2) Plaintiffs have properly alleged, at minimum, the possibility of an actionable theory of liability

for negligence and breach of implied warranty against FRI—despite Defendants' self-serving Declaration to the contrary. (Mots. ¶ 7; Azinian Compl. ¶¶ 69, 109–14; Berg Compl. ¶¶ 69, 109–14.)

Since Defendants now challenge Plaintiffs' joinder of FRI, the Court will focus on its relationship to Plaintiffs' claims. Plaintiffs allege that FRI negligently failed to perform the appropriate testing of Bravelle—including potency, stability, and efficacy testing—and that FRI's negligent design and failure to monitor the drug for stability and purity led to Plaintiffs' injuries. (Azinian Compl. ¶ 74; Berg Compl. ¶ 74.) Plaintiffs further allege that FRI knew that Bravelle was sub-potent, and that the reduced efficacy of the drug led to unjustifiably dangerous side effects—but FRI, along with Defendants, continued to advertise and sell Bravelle as an effective FSH nonetheless. (Azinian Compl. ¶¶ 42, 52–53, 113–19; Berg Compl. ¶¶ 42, 52–53, 113–19.) They allege that they purchased Bravelle because of Defendants' claims about its potency and efficacy, which were based on FRI's research. (Azinian Compl. ¶¶ 42, 52–53; Berg Compl. ¶¶ 42, 52–53.)

Plaintiffs claim that FRI was either directly involved in developing Bravelle or indirectly involved in "preclinical, early or exploratory testing or research of Bravelle, even if the actual work was done by an outside group," such as the "Bravelle IVF study group." (Mots. ¶ 27.) They also note that FRI is listed on FPI's website as the "flagship research center for Ferring" that specializes, in part, in "reproductive health." (*Id.*, Exs. 2–3.) FRI also funds "exploratory, discovery and preclinical research into novel drug targets." (*Id.*, Ex. 3.)

Defendants argue otherwise. Claudio Schteingart, FRI's Vice President of Science and Technology Research, generally denies that FRI was involved in the early research of Bravelle or had any role "in performing, overseeing, or directing any activity with respect to the potency, stability, purity, efficacy, oxidation, chemical structure, or biological properties, including design or monitoring testing protocols, required for Bravelle." (Supplemental Schteingart ("Supp. Schteingart") Decl. ¶¶ 1–9,

4

[Berg/Azinian Actions] ECF No. 25-1.) Based on Schteingart's Declaration, Defendants argue that Plaintiffs cannot recover from FRI under any theory of liability, and thus FRI was fraudulently joined and the present action should remain in federal court. (Mots. ¶ 6.)

On June 28, 2016, Plaintiffs filed the instant Motions to Remand. (Azinian/Berg Actions, ECF No. 23.) They ask that the Court return these matters to the Los Angeles Superior Court, where two other actions against Defendants related to Bravelle are pending. (Mots. ¶ 2; *see Landesman v. Ferring Pharm., Inc.* (BC608563, filed Jan. 27, 2016); *Verbeck v. Ferring Pharm., Inc.* (BC612497, filed Mar. 3, 2016).) On July 25, 2016, Defendants filed their Oppositions to Remand, which included Schteingart's Supplemental Declaration. (Azinian/Berg Actions, ECF Nos. 25, 25-1.) Plaintiffs tendered their timely Replies. (Azinian/Berg Actions, ECF No. 26.) Plaintiffs' Motions to Remand now stand for decision.

## III.  LEGAL STANDARD

Federal courts have subject matter jurisdiction only as authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts have original jurisdiction where an action arises under federal law, *id.* § 1331, or where each plaintiff's citizenship is diverse from each defendant's citizenship and the amount in controversy exceeds $75,000, *id.* § 1332(a). Corporations are deemed citizens of "every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C.A. § 1332(c)(1).

A suit filed in state court may be removed to federal court only if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). The removal statute is strictly construed against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The party seeking removal bears the

burden of establishing federal jurisdiction. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006). Removal based on a court's diversity jurisdiction is proper despite the presence of a non-diverse defendant where that defendant is a fraudulently joined or a sham defendant. *See Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

Defendants alleging fraudulent joinder must "prove that individuals joined in the action cannot be liable on any theory." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *see also Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989) (finding fraudulent joinder if after all disputed questions of fact and all ambiguities are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned). Furthermore, "fraudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (quoting favorably the Fifth Circuit's decision in *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995) (citations omitted)). The analysis is also similar to a motion to dismiss stander under Rule 12(b). *Sessions v. Chrysler Corp.*, 517 F.2d 759, 761 (9th Cir.1975). Nevertheless, Defendants must prove fraudulent joinder by "clear and convincing evidence*.*" *Hamilton Materials, Inc. v. Dow Chem. Co.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (internal citation omitted); *Staley v. BNSF Ry. Co.*, No. CV 14-136-BLG-SPW, 2015 WL 860802, at *3 (D. Mont. Feb. 27, 2015) (holding, in part, that an attached affidavit that contradicted the plaintiff's claims were not clear and convincing evidence of fraudulent joinder). "If the plaintiff fails to state a cause of action against the [non-diverse] defendant, and the failure is obvious according to the settled rules of the state," the joinder is considered fraudulent, and the party's citizenship is disregarded for purposes of diversity jurisdiction. *Hamilton Materials*, 494 F.3d at 1206 (quoting *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)). However, "[i]f there is a non-fanciful possibility that plaintiff can state a

1  claim under [state] law against the non-diverse defendant[,] the court must remand."
2  *Hamilton Materials*, 494 F.3d at 1206; *see also Good v. Prudential Ins. Co. of Am.*, 5
3  F. Supp. 2d 804, 807 (N.D. Cal. 1998) ("The defendant must demonstrate that there is
4  no possibility that the plaintiff will be able to establish a cause of action in State court
5  against the alleged sham defendant."). Given this standard, "[t]here is a presumption
6  against finding fraudulent joinder, and defendants who assert that plaintiff has
7  fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway*
8  *Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001).

## IV. DISCUSSION

Plaintiffs move to remand these actions to state court for lack of diversity. (Mots. ¶ 1.) They argue that the removal of this action was improper because FRI and seven of the Plaintiffs are citizens of California. (*Id.*) The Supreme Court "ha[s] consistently interpreted § 1332 as requiring complete diversity: In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005). Here, FRI is a California corporation with its principle place of business in California, which both parties agree destroys diversity. (Azinian Opp'n 3, ECF. No. 25; Berg Opp'n 3, ECF No. 25 ("Opp'ns"); Azinian Compl. ¶ 4; Berg Compl. ¶ 4.) Defendants, however, argue that Plaintiffs fraudulently joined FRI, and therefore diversity jurisdiction remains. (Opp'ns 1–2.) This Court does not agree.

The Court finds that Plaintiffs have sufficiently stated a plausible cause of action against the resident defendant FRI. (Azinian Compl. ¶¶ 72–76, 113–19; Berg Compl. ¶¶ 72–76, 113–19; Mots. ¶ 1.) They assert two claims against FRI: (1) negligence; and (2) breach of implied warranty. (Azinian Compl. ¶¶ 72–76, 113–19; Berg Compl. ¶¶ 72–76, 113–19.) According to Plaintiffs, FRI breached its duty of reasonable care by negligently designing, developing, testing, and researching

...

Bravelle, and inadequately designed or monitored the necessary testing protocols for stability, efficacy, purity, and potency. (Mots. ¶¶ 6–8.) Plaintiffs also allege that FRI breached an implied warranty that Bravelle was safe, effective, and fit for use by consumers for its intended use and that it was of merchantable quality that would not produce harmful side effects. (*Id.* ¶ 7.) Defendants argue that there is no possibility that Plaintiffs can demonstrate that FRI was negligent or breached an implied warranty. (Opp'ns 7–11.)

Under a theory of liability for negligence, Plaintiffs must demonstrate that FRI owed them a legal duty, that FRI breached that duty, and that the breach was a proximate or legal cause of their injuries. *Merrill v. Navegar, Inc.*, 28 P.3d 116, 123 (Cal. 2001). In order for Plaintiffs to succeed on a theory of liability for breach of implied warranty, Plaintiffs must demonstrate that Bravelle did not "[c]onform to the promises or affirmations of fact made" by FRI as to the drug's merchantability. Cal. Civ. § 1791.1. However, for purposes of the fraudulent joinder analysis, Defendants must demonstrate with clear and convincing evidence that there is "no possibility" that Plaintiffs can establish a cause of action against FRI under either theory. *Good*, 5 F. Supp. 2d at 807. Defendants argue that Plaintiffs claims against FRI are controverted by Schteingart's Supplemental Declaration. (Opp'ns 2–7; Supp. Schteingart Decl. ¶¶ 1–9.)

Here, despite Defendants' ability to pierce the pleadings and provide supplemental information, there is no doubt that Plaintiffs' Complaints allege a "possibility" of recovery against FRI. (Azinian Compl. ¶¶ 72–76, 113–19; Berg Compl. ¶¶ 72–76, 113–19.) *See Albi v. St. & Smith Publ'ns*, 140 F.2d 310, 312 (9th Cir. 1944) (Holding that, even in "borderline situations, where it is doubtful whether the complaint states a cause of action against the resident defendant, the doubt is ordinarily resolved in favor of the retention of the cause in the state court.") The Court, of course, takes into account Schteingart's Declaration, but also acknowledges that: (1) FRI was an original joined party in these actions; and (2) there are two other

pending actions against the same Defendants—including FRI—in state court under the same theories of liability as in the present case. (Azinian Compl. ¶ 4; Berg Compl. ¶ 4; Mots. ¶ 2; *Verbeck v. Ferring Pharm., Inc.* (BC612497); *Landesman v. Ferring Pharm., Inc.* (BC608563).)

First, the Court holds that the Schteingart Declaration is not dispositive. In his Supplemental Declaration, Schteingart disavows FRI's involvement in the "early" research, funding of research, or development and any other activity relating to Bravelle's potency, stability, purity, efficacy, oxidation, chemical structure, or biological properties—including the design or monitoring of any of Bravelle's testing protocols. (Supp. Schteingart Decl. ¶¶ 1–9.) However, coupled with other indicia of FRI's involvement, the Court finds this declaration to serve as a more general denial of wrongdoing that falls short of "clear and convincing" evidence, which "is insufficient to overcome the burden of showing fraudulent joinder." *See Hampton v. Georgia-Pac. L.L.C.*, No. CIV.A. 11-0363-KD-N, 2011 WL 5037403, at *6 (S.D. Ala. Oct. 24, 2011) (Defendants' "denials of responsibility are not sufficient to satisfy the 'clear and convincing' standard of proof to carry defendants' burden of showing that plaintiff cannot possibly establish a cause of action against the individual defendants"); *Smith v. Smithkline Beecham Corp.*, No. CIV. A. 10–73, 2010 WL 3432594, at *4 (E.D. Ky. Aug. 30, 2010) ("A solitary self-serving affidavit cannot eliminate the prospect of any dispute, particularly where the complaint is in direct disagreement"); *Mattress Warehousing, Inc. v. Power Mktg. Direct, Inc.*, No. 08–CV–141–LRR, 2009 WL 395162, at *6 (N.D. Iowa Feb. 17, 2009) ("Were courts to find fraudulent joinder whenever presented with a defendant's self-serving affidavit, few cases would ever be remanded and federal jurisdiction would greatly expand.").

Furthermore, with the Schteingart Declaration at odds with Plaintiffs' offered facts, the conflicting claims from an answer or supplemental affidavit should be resolved in Plaintiffs' favor. (*Id.* ¶¶ 18, 20, 22.) *See Staley v. BNSF Ry. Co.*, No. CV 14-136-BLG-SPW, 2015 WL 860802, at *5 (D. Mont. Feb. 27, 2015). Interestingly,

1 both parties rely on *Staley* to support their position. (Removal Notices 18–22; Opp'ns 5–6.) Yet Defendants, either through error or obfuscation, misinterpret *Staley* to mean that, once a defendant offers contradictory evidence, the dispute demonstrates a rebuttable presumption that a plaintiff has failed to sufficiently state a theory of liability for purposes of the fraudulent joinder inquiry. (Opp'ns 5 (citing *Staley*, 2015 WL 860802, at *4–5).) The case offers no such holding. (*Id.* at *5 (holding that an affidavit presenting factual disputes is not clear and convincing evidence that the defendant has met its burden that the plaintiff cannot possibly recover on any theory of liability for purposes of fraudulent joinder). With no legal support for Defendants' theory, the Court returns to the rule that, when presented with a factual dispute, courts should resolve fraudulent joinder challenges in Plaintiffs' favor where those factual disputes do not disturb the *possibility* of recovery. *Kruso*, 872 F.2d at 1426; *Staley*, 2015 WL 860802, at *5.

Moreover, even if the Schteingart Declaration was considered clear and convincing evidence in this context, the declaration does not refute all of Plaintiffs' claims and thus FRI remains a party. See *York v. Riddell, Inc.*, No. 15-02015-VAP (SPX), 2016 WL 738419, at *4–6 (C.D. Cal. Feb. 23, 2016) (finding fraudulent joinder because a plaintiff could not maintain her claim in the face of a declaration presenting *undisputed* clear and convincing evidence that the defendant was no longer in business at the time of the plaintiff's injury); *Salkin v. United Serv. Auto Ass'n*, 767 F. Supp. 2d 1062, 1066–68 (C.D. Cal. 2011) (finding fraudulent joinder based on two declarations from *two declarants* along with *other submitted evidence* substantiating the declarations that directly refuted all of the plaintiff's claims). Here, along with the allegations in their Complaints, Plaintiffs note that FRI is displayed on FPI's website as the "flagship research center for Ferring" that specializes, in part, in "reproductive health," and that surely the entity specializing in reproductive health issues would have *some* hand in the design and testing of the parent company's IVF drugs. (*See* Mots. ¶ 27, Ex. 2–3.) Despite Schteingart's protestations, his Declaration fails to

explain FRI's prominence on FPI's website. (Mots. ¶ 27, Exs. 2–3; Supp. Schteingart Decl. ¶¶ 1–9.) Defendants mistakenly argue that such information is "irrelevant;" however, this is precisely the type of evidence that gives credence to Plaintiffs claims that FRI could, in some way, have been involved in Bravelle's development. (Opp'ns 6; Mots. ¶ 27, Exs. 2–3.)

Furthermore, Plaintiffs allege that FRI was, at minimum, involved in "preclinical, early or exploratory testing or research of Bravelle, even if the actual work was done by an outside group" through "grants, support or otherwise…given [FRI's] expertise." (Mots. ¶ 27.) Although Schteingart denies FRI's involvement in the "Bravelle IVF study group," he does not address FRI's funding or participation in outside exploratory testing or research. (Mots. ¶ 27; Supp. Schteingart Decl. ¶¶ 1–9.) Therefore, Schteingart's Declaration fails to refute all of Plaintiffs' claims and, without any other evidence to substantiate the Declaration or refute FRI's involvement, the Court finds a "non-fanciful possibility" that Defendants' flagship reproductive health research lab had a hand in the design, research, and testing of its reproductive health drug Bravelle. *See Hamilton Materials*, 494 F.3d at 1206; *see also Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998) ("The defendant must demonstrate that there is *no possibility* that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant.") (emphasis added). Accordingly, Schteingart's Supplemental Declaration fails to demonstrate that Plaintiffs' could not possibly recover on any theory of liability.

Second, the Court notes that FRI was a named party from the outset of this litigation—and where a non-diverse party is a party *before* removal, the Court can infer that their existence in the litigation is not meant to destroy diversity. (*See* Azinian/Berg Actions, ECF No. 1-2; *see also Archuleta v. Am. Airlines, Inc.*, No. CV 00-1286 MMM (SHX), 2000 WL 656808, at *5 (C.D. Cal. May 12, 2000) (finding that although the Court must look beyond the complaint to determine whether individuals have been fraudulently joined, the Court may infer that removal was

1  improper based on the joinder of parties in the original complaint).)

2  Finally, the Court takes judicial notice of the two pending actions in state court
3  where FRI is a party—and where no Defendant has thus far challenged or moved to
4  dismiss FRI due to its supposed lack of involvement in the testing, research, or
5  monitoring of Bravelle. Fed. R. Evid. 201; *U.S. v. Black*, 482 F.3d 1035, 1041 (9th
6  Cir. 2007) (finding that the Court "may take notice of proceedings in other courts,
7  both within and without the federal judicial system, if those proceedings have a direct
8  relation to matters at issue.").

9  Therefore, the Court holds that there is a "non-fanciful possibility" that FRI
10 could be held liable for negligence or breach of implied warranty, and is thus not
11 fraudulently joined. *See Hamilton Materials*, 494 F.3d at 1206. FRI's presence in the
12 matter deprives the district court of original diversity jurisdiction over the entire action
13 and accordingly this Court must remand the case to state court. *See Exxon Mobil*
14 *Corp.*, 545 U.S. at 553; *Weeping Hollow Ave. Trust v. Spencer*, No. 13-16060, 2016
15 WL 4088749, at *5 (9th Cir. Aug. 2, 2016).

16 For the reasons discussed above, the Court **GRANTS** Plaintiffs' Motions and
17 **REMANDS** the actions to the Los Angeles Superior Court, Case Nos. B618163 and
18 B618164, respectively. The Clerk of the Court shall close these cases.

20 **IT IS SO ORDERED.**

22 September 16, 2016

24 _____
25                 **OTIS D. WRIGHT, II**
           **UNITED STATES DISTRICT JUDGE**